**Francisco DURAN, Jr., Appellant**

v.

**The STATE of Texas**

**NO. PD–0429–15**

Court of Criminal Appeals of Texas.

Delivered: June 22, 2016

Joseph Moreno, The Law Office of Joseph Moreno, Harlingen, TX, Attorneys for Appellant.

Rene B. Gonzalez, Assistant District Attorney, Brownsville, TX, Lisa C. McMinn, State's Attorney, Austin, Attorneys for The State.

## OPINION

NEWELL, J., delivered the opinion of the Court in which MEYERS, JOHNSON, HERVEY, ALCALA, AND RICHARDSON, JJ., joined.

In this case, a jury convicted Appellant of both burglary of a habitation and aggravated assault in two separate counts. The jury found Appellant guilty of both counts, but the State abandoned the aggravated assault conviction prior to the punishment phase of the trial. We are asked to determine whether the court of appeals erred by 1) upholding the conviction on the aggravated assault charge even though the State had abandoned that charge prior to punishment; and 2) upholding the trial court's modification to the judgment to include a deadly-weapon finding.

We reverse. The court of appeals should have vacated the conviction for aggravated assault because the State unequivocally abandoned the charge in the middle of trial and after jeopardy had attached. Moreover, the court of appeals improperly held that the deadly-weapon finding was proper based upon the jury's finding of guilt on the burglary charge. Finally, we disagree with the State that the trial court could rely upon the abandoned jury verdict in the aggravated assault case to support the entry of a deadly weapon finding in Appellant's burglary case.

### Facts

In this case, the victim, Gonzalo Gonzalez, threw something at Appellant and his friends. Later that same day, Appellant and his friends retaliated by breaking into Gonzalo's apartment and throwing a DVD player at him. The State indicted Appellant for the offenses of burglary of a habitation and aggravated assault in two separate counts. In Count I, the State charged Appellant with burglary of a habitation, alleging that Appellant had entered the victim's residence without consent and either committed or attempted to commit the felony offense of aggravated assault. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). In Count II, the State charged Appellant with the separate offense of aggravated assault with a deadly weapon, alleging that Appellant had intentionally, knowingly, or recklessly caused bodily injury to Gonzalo Gonzalez by striking him in the head and using or exhibiting a deadly weapon in the process. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). The indictment also included an enhancement count.

The jury charge properly tracked the language of the indictment. Neither the indictment nor the jury charge contained language concerning the use of a deadly weapon in the burglary charge. It did, however, ask the jury to determine whether Appellant had committed or attempted to commit an aggravated assault as part of the burglary. And, the jury charge also instructed the jury to find Appellant guilty of aggravated assault if it found that Appellant used or exhibited a deadly weapon.

The jury found Appellant guilty on both counts. Before proceeding to punishment, the State abandoned the aggravated assault conviction out of concern that imposing punishment for it would violate the Double Jeopardy Clause by subjecting Appellant to two punishments for the same offense. At the beginning of the punishment phase, the State's attorney rose and announced, "At this time the State is abandoning the second charge of aggravated assault with a deadly weapon due to the fact that the Defendant cannot be punished on both charges. It is double jeopardy, so we are going forward solely on the burglary of a habitation [charge]." The jury found the enhancement allegation of a prior felony to be true, and assessed punishment on the first count at twenty-five years' imprisonment.[1]

Despite the State's abandonment of the aggravated assault charge, the judgment reflected that the jury convicted Appellant of both burglary of a habitation and aggravated assault with a deadly weapon, with a sentence of 25 years. It did not contain a deadly-weapon finding. The State later moved to modify the judgment to have the trial court enter a deadly-weapon finding. The State argued that the jury had necessarily made a finding that a deadly weapon was used in the commission of the crime by finding Appellant guilty of aggravated assault, even though the State had voluntarily abandoned that count after the jury returned the verdict. The trial court granted the motion over Appellant's objections and modified the judgment to include the following: "Finding on Special Issue: Affirmative Finding that a deadly weapon was used or exhibited during the commission of this offense was made by the Jury."

### Direct Appeal

On appeal, Appellant first argued that the trial court had improperly included the aggravated assault conviction in the judgment because the State had abandoned the allegation prior to punishment. The State agreed that the judgment should not reflect that the jury convicted Appellant of aggravated assault. However, the court of appeals held that it was unnecessary to completely delete the aggravated assault conviction from the judgment because Appellant was, in fact, convicted of it. *Duran v. State*, No. 13–12–00344–CR, 2013 WL 3378327 at *4 (Tex.App.—Corpus Christi

---

1. Appellant also argues that his sentence is illegal because he was convicted only of the second-degree-felony offense of burglary yet he was sentenced to twenty-five years in prison. Section 30.02(d)(2) elevates the offense of burglary of a habitation to a first-degree felony if any party to the offense entered the habitation and committed or attempted to commit a felony offense. Tex. Penal Code Ann. § 30.02(d)(2) (West 2010). Under the facts of this case the jury found Appellant guilty of a first degree felony offense, and the court of appeals properly reformed the judgment to reflect that. *Duran v. State*, No. 13–12–00344–CR, 2013 WL 3378327 at *10 (Tex. App.—Corpus Christi July 3, 2013) (not designated for publication). Additionally, the State alleged that Appellant had previously been convicted of the felony offense of sexual assault of a child and the jury found that enhancement allegation true. The jury assessed Appellant's punishment at twenty-five years in prison, well within the applicable punishment range. Tex. Penal Code Ann. § 12.32(a) (West 2010); Tex. Penal Code Ann. § 12.42(c)(1) (West 2010).

July 3, 2013) (not designated for publication). Instead, the court of appeals held that the judgment should be modified to reflect the State's abandonment of the aggravated assault allegation prior to punishment and affirmatively state that punishment was assessed only on Appellant's burglary conviction. *Id.*

Appellant also argued that the trial court erred in modifying the judgment to include a deadly-weapon finding because the jury verdict on the burglary of a habitation allegation did not amount to an affirmative finding that Appellant had used or exhibited a deadly weapon during the offense. The State responded that the deadly-weapon finding was appropriate because the jury had convicted Appellant of aggravated assault with a deadly weapon. According to the State, that verdict reflected an affirmative finding by the jury on the deadly-weapon issue even though the State had voluntarily and unequivocally abandoned the entire allegation. The court of appeals held that the jury's conviction in Appellant's burglary case was sufficient to authorize the entry of a deadly-weapon finding, obviating any need to address the State's argument.[2]

### The Judgment Should Not Include a Conviction for an Abandoned Allegation

 The State may, with the consent of the trial court, dismiss, waive, or abandon a portion of the indictment. *Ex parte Preston*, 833 S.W.2d 515, 517 (Tex.Crim. App.1992). However, if the State dismisses, waives, or abandons a charge after a jeopardy has attached (after a jury is impaneled and sworn in a jury trial), it is tantamount to an acquittal, as the State is barred from later litigating those allegations. *Id.; see also Lewis v. State*, 889 S.W.2d 403, 406 (Tex.App.—Austin 1994, pet. ref'd) (citing *Black v. State*, 143 Tex. Crim. 318, 158 S.W.2d 795, 796 (Tex.Crim. App.1942)). Moreover, a defendant may not be punished for both a burglary with the commission of a felony during the burglary and the underlying felony itself. *Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim.App.2006). And the appropriate remedy when a defendant is subjected to multiple punishments for the same conduct is to affirm the conviction on the most serious offense and vacate the other convictions. *Bigon v. State*, 252 S.W.3d 360, 372 (Tex.Crim.App.2008). We agree with both the State and Appellant that the court of appeals should have vacated the aggravated-assault conviction that the State unequivocally abandoned to avoid running afoul of the constitutional prohibition against multiple punishments. We reverse the court of appeals holding in this regard and vacate Appellant's conviction for aggravated assault contained in the judgment.

### When Is It Appropriate to Enter a Deadly–Weapon Finding?

 The entry of a deadly weapon in a judgment not only curtails a trial court's ability to order community supervision, it also affects a defendant's eligibility for parole. Section 508.145(d) of the Texas Government Code states that "an inmate serving a sentence … for an offense for which the judgment contains an affirmative finding under Section 3g(a)(2) of [Article 42.12,

---

**2.** Appellant also challenged the deadly-weapon finding based upon notice, sufficiency, and the recitation in the judgment to reflect that the jury made a deadly-weapon finding pursuant to a special issue. The court of appeals properly removed the language in the judgment reciting that the jury made a deadly-weapon finding pursuant to a special issue and rejected Appellant's claims regarding notice and sufficiency. *Duran,* slip op. at *5–6. Appellant does not take issue with the court of appeals resolution of these issues.

Code of Criminal Procedure]" must serve a longer period, without consideration of good conduct time, before he may be released on parole. TEX. GOV'T.CODE ANN. § 508.145(d) (West 2010). For a trial court to enter a deadly-weapon finding in the judgment, the trier of fact must first make an "affirmative finding" to that effect. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g (a)(2) (West 2010). Under the text of the statute, a trial court is authorized to enter a deadly-weapon finding in the following circumstances:

> [W]hen it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.

TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g (a)(2) (West 2010). As we explained in *Polk v. State*, the term "affirmative finding" means the trier of fact's *express* determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense. 693 S.W.2d 391 (Tex.Crim.App.1985). Courts do not look to the facts of the case to "imply" an affirmative deadly-weapon finding; we look to the charging instrument, the jury charge, and the jury verdict to evaluate the propriety of an entry of a deadly-weapon finding in the judgment. *Id.* at 393–96.

In *Polk*, we listed three different ways in which a court can determine that the trier of fact actually made an affirmative finding of a deadly weapon.

(1) the indictment specifically alleged a "deadly weapon" was used (using the words "deadly weapon") and the defendant was found guilty "as charged in the indictment;"

(2) the indictment did not use the words "deadly weapon" but alleged use of a deadly weapon *per se* (such as a firearm); or

(3) the jury made an express finding of fact of use of a deadly weapon in response to submission of a special issue during the punishment stage of trial.

693 S.W.2d at 396. Notably, in *Polk*, we held that the trial court's entry of a deadly-weapon finding was not express even though the jury could have determined that the defendant had used a deadly weapon by committing an attempted murder. The State argued that the finding of guilt meant the jury necessarily made an affirmative finding of use or exhibition of a deadly weapon or firearm, but we rejected those arguments because they amounted to implied findings. *Id.* To avoid such implied findings, we stated unequivocally that a trial court could not properly enter an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless the case fit into one of the listed scenarios. *Id.* ("No longer will a verdict 'amount to' or 'necessarily imply' an affirmative finding of use or exhibition of a deadly weapon or firearm.").

■ Of course, we did not completely put a stopper in the inference-genie's bottle. *Polk* itself allows courts to make an inferential leap, albeit a tiny and completely logical one, to hold that the jury's verdict that a defendant is guilty "as charged in the indictment" authorizes entry of a deadly-weapon finding. Under that scenario, the trial court must still make deductive inferences ("necessary" ones to be sure, but inferences none the less) to reach the conclusion that the jury necessarily thought about, and affirmatively found,

that a deadly weapon was used or exhibited even though the jury's answer in its verdict does not expressly state that it did so. By way of contrast, no inferences are required when the trial court submits a question to the jury as a special issue in punishment: the trial court specifically asks the jury in the jury charge whether a deadly weapon was used or exhibited during the commission of the offense by the defendant or by a party to the offense, and the jury answers that question directly in a separate verdict form. And while we explained in *Polk*, that a finding must be "express," we nevertheless allowed for entry of a deadly-weapon finding in scenarios where the trier of fact does not directly express that it has determined that a deadly weapon was used or exhibited in commission of a felony offense or during immediate flight therefrom. *Polk*, 693 S.W.2d at 396. This is consistent with the plain terms of the statute itself which only refers to the need for an "affirmative" finding rather than an "express" one. TEX. CODE CRIM. PROC. ANN., art. 42.12 § 3g (a)(2) (West 2010).[3]

So, it is not surprising that, in *Lafleur v. State*, we added another circumstance where the trial court was authorized to enter a deadly-weapon finding. 106 S.W.3d 91, 92 (Tex.Crim.App.2003). We held that a jury makes an express finding that a deadly weapon was used or exhibited when:

1) the indictment specifically alleges the use of "deadly weapon;"

2) the jury charge's application paragraph on a lesser-included offense requires a finding from the jury beyond a reasonable doubt that the defendant

committed an offense using the alleged "deadly weapon;" and

3) the jury finds the defendant guilty of that lesser-included offense.

*Id.* at 98–99. We explained that this holding served the underlying purpose in *Polk* by ensuring that the jury actually made an affirmative deadly-weapon finding because the jury necessarily decided whether a deadly weapon was used or exhibited in light of the application paragraph. *Id.* Furthermore, this conclusion did not run afoul of *Polk* because *Polk* simply did not address a situation in which a defendant is indicted for using a deadly weapon in one offense and found guilty of a lesser-included offense also using a deadly weapon. *Id.* at 98. Any other decision, according to the Court, would exalt form over substance to no discernible jurisprudential purpose. *Id.*

In *Crumpton v. State*, we seem to have extended the degree to which courts can rely upon deductive reasoning to determine whether the jury entered an affirmative deadly-weapon finding. There, we considered the situation in which: 1) the indictment for voluntary manslaughter included a deadly-weapon allegation; 2) the jury found the defendant guilty of the lesser-included offense of criminally negligent homicide; 3) the application paragraph regarding the lesser-included offense did not include a reference to the use or exhibition of a deadly weapon; but 4) the verdict form indicated the jury found the defendant guilty of criminally negligent homicide, "as included in the indictment." *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex.Crim.App.2009). We held that the jury had determined, as a matter of law, that a deadly weapon had been

---

**3.** Indeed, we have noted that submitting a special issue at punishment may be the better practice, but we have never held that a purely "express" finding though a special issue at

punishment is the only scenario that authorizes the trial court's entry of a deadly-weapon finding. *See e.g. Polk,* 693 S.W.2d at 394 n.3.

used in the commission of criminally negligent homicide because there is no logical way to commit the offense of criminally negligent homicide by act rather than omission without using a deadly weapon. *Id.* ("Having found that the defendant was guilty of homicide, the jury necessarily found that the defendant used something that in the manner of its use was capable of causing-and did cause-death.").

Arguably, however, this rationale for our holding could be viewed as dicta given that we first observed in *Crumpton* that the State had specifically alleged the use of a deadly weapon in the indictment and the jury had found the defendant guilty "as included in the indictment." *Id.* As we stated in *Crumpton*:

> The jury's verdict was a finding that the defendant used a deadly weapon. One reason is that the verdict expressly found the defendant guilty of the offense "as included in the indictment." The indictment expressly alleged that the defendant committed the offense with "a deadly weapon." The verdict's reference to the indictment therefore constituted a finding that the allegation was true.

301 S.W.3d at 664. Under a strict application of *Polk*, the affirmative finding was proper in *Crumpton* not only because it was impossible to commit the offense without using a deadly weapon, but also because it fit within the first of *Polk*'s listed scenarios. Additionally, we have not yet relied on the deductive-reasoning aspect of *Crumpton* to require the entry of a deadly weapon in an aggravated assault case, let alone a burglary case, though some courts of appeals have relied upon it in the context of criminally negligent homicide or to decide the issue of notice. *See e.g. McCallum v. State*, 311 S.W.3d 9, 18 (Tex.App.—San Antonio 2010, no pet.) (holding entry of deadly-weapon finding was proper where jury found the defendant guilty of criminally negligent homicide); *see also Vickers v. State*, 467 S.W.3d 90, 96 (Tex. App.–Texarkana 2015, pet. ref'd.) (holding that indictment alleging that defendant had committed or attempted to commit an aggravated assault during a burglary of a habitation provided sufficient notice that the State would seek a deadly-weapon finding). Regardless of the logical force of the deductive-reasoning approach in *Crumpton*, this Court appears to have provided more than one reason for reaching its conclusion in that case. *Crumpton*, 301 S.W.3d at 664 ("Another reason is that a verdict of homicide necessarily is a finding that a deadly weapon was used.").

### *Did The Jury Make An Affirmative Deadly–Weapon Finding When It Found Appellant Guilty of Burglary?*

With regard to the jury's verdict in Count I, we cannot say under either the formalism of *Polk* or the deductive reasoning of *Crumpton* that the jury made an affirmative deadly-weapon finding when it found Appellant guilty of burglary of a habitation. Count I of the indictment did not contain any specific deadly-weapon language, but rather, charged Appellant with "intentionally or knowingly enter[ing] a habitation, without the effective consent of Gonzalo Gonzalez, the owner thereof, and attempt[ing] to commit or committ[ing] the felony offense of Aggravated Assault." Thus, although Appellant was found guilty "as charged in the indictment," the indictment for Count I did not allege the use of a deadly weapon, so it would not fall within the first scenario listed in *Polk*.

Moreover, this does not satisfy the second *Polk* scenario because a DVD player is not a deadly weapon *per se*. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A); *see also Thomas v. State*, 821 S.W.2d 616, 620 (Tex.

Crim.App.1991). To constitute a deadly weapon *per se*, an object must be "deadly by design, rather than by usage," which a DVD player is certainly not. *Id.* Additionally, although the trial court modified the judgment to include a "special issue," the jury was never asked to respond to a special issue submitted during punishment. Not only does this fail to support a deadly-weapon finding on the third *Polk* scenario, but it also reinforces the court of appeals' decision to delete the reference in the judgment to a "special issue" that the jury never considered. Finally, Appellant was not found guilty of a lesser-included offense, so the specific holding of *LaFleur* cannot be applied in this case.

Resort to deductive reasoning does not justify the entry of an affirmative finding either. The application paragraph authorized the jury to find Appellant guilty of burglary of a habitation even if it believed that Appellant merely attempted to commit the aggravated assault. We have previously observed that there is no logical way to commit the offense of aggravated assault without using a deadly weapon. *See Landrian v. State*, 268 S.W.3d 532, 538 (Tex.Crim.App.2008) (noting that both statutory aggravators of simple assault involve the use of a deadly weapon); *see also Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim.App.2008) (holding that the defendant received adequate notice that there would be a deadly-weapon issue in a burglary of a habitation case because there is no way to commit aggravated assault without using a deadly weapon). But the jury charge authorized a finding of guilt without requiring the jury to decide whether Appellant had actually committed the offense of aggravated assault. *See Polk*, 693 S.W.2d at 396 (holding that affirmative deadly-weapon finding was improper where jury convicted the defendant of attempted murder and no deadly weapon was included in the indictment). Concep-

tually, it may be very difficult to imagine how one might attempt to commit an aggravated assault without using something that in its use or intended use was capable of causing serious bodily injury or death, but it is at least theoretically possible. *See e.g. Lawhorn v. State*, 898 S.W.2d 886, 891 (Tex.Crim.App.1995) (explaining the concept of factual impossibility and noting various examples such as attempting to kill with poison that was not capable of producing death). Relying upon the facts of the case to infer that the jury was clearly not dealing with an "attempt" or a "factual impossibility" situation is exactly the type of "implied finding" prohibited by *Polk* and the statute itself. *Polk*, 693 S.W.2d at 396 ("We believe the Legislature, by adding the words 'affirmative finding' ... meant to save all of us from sinking even deeper into the quagmire of whether differing indictment/verdict/fact situations amounted to 'implied' findings or not."). Thus, we cannot agree with the court of appeals that the jury necessarily decided the deadly-weapon issue when it found Appellant guilty of burglary of a habitation.

### Did the Trial Court Properly Rely Upon the Jury's Finding of Guilt in the Aggravated Assault Case After the State Unequivocally Abandoned That Count?

■ The State argued to the trial court and the court of appeals that the entry of a deadly-weapon finding was appropriate based upon the jury's verdict in the abandoned aggravated assault charge. Having determined that the jury's verdict on the burglary charge was sufficient by itself to justify the entry of a deadly-weapon finding, the court of appeals understandably chose not to address the State's argument regarding the jury's verdict in the aggravated assault case. However, as discussed above, the State agrees that entry of the aggravated assault conviction in the judgment is improper because the State un-

equivocally abandoned the jury's verdict in that case. *Preston*, 833 S.W.2d at 517. And, as discussed, above, the jury's verdict in the burglary of a habitation case did not authorize the trial court's entry of a deadly weapon in that case. Having unequivocally abandoned the jury's verdict in the aggravated assault case without submitting a special issue instruction at punishment, the trial court had nothing upon which it could base the entry of a deadly-weapon finding. *Polk*, 693 S.W.2d at 396 (listing the scenarios where a trial court is authorized to enter a deadly-weapon finding); *see also Bennett v. State*, 235 S.W.3d 241, 243–44 (Tex.Crim.App.2007) ("Although the court of appeals did not address the defense of property aspect of appellant's point of error, a remand is unnecessary in this case because our holding forecloses any relief on her only remaining complaint."). Consequently, we reform the judgment to delete any reference to a deadly-weapon finding in Appellant's burglary of a habitation conviction.

### *Conclusion*

We reverse the court of appeals' holdings that it was not necessary to vacate the conviction for aggravated assault from the trial court's judgment, and that the trial court's deadly-weapon finding was authorized by the jury's verdict in Appellant's burglary case. We also hold that the trial court was not authorized to enter a deadly-

1. The majority's analysis of this issue in accordance with *Polk v. State*, 693 S.W.2d 391, 393–96 (Tex.Crim.App.1985), *Lafleur v. State*, 106 S.W.3d 91, 92 (Tex.Crim.App.2003), and *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim.App.2009) is spot-on.

2. The trial court judgment states that the degree of offense of Count I is a second degree offense, and the degree of offense of Count II is a first degree offense. However, as alleged in this indictment, aggravated assault is a second degree felony (TEX. PENAL CODE

weapon finding in the burglary of habitation case based upon the abandoned aggravated assault conviction. We affirm Appellant's burglary of habitation conviction, but modify the judgment to vacate the aggravated assault conviction and delete the deadly-weapon finding in the judgment on Appellant's burglary of a habitation conviction.

RICHARDSON, J., filed a concurring opinion in which JOHNSON, J., joined. YEARY, J., filed an opinion concurring in part and dissenting in part, in which KEASLER, J., joined. KELLER, P.J., dissents.

### CONCURRING OPINION

RICHARDSON, J., filed a concurring opinion in which JOHNSON, J., joined.

I agree with the Court's conclusion that the jury's guilty verdict in Count I (burglary of a habitation) does not support a deadly weapon finding.[1] And, I agree that the conviction in Count II (aggravated assault) should have been vacated by the court of appeals, leaving a judgment of conviction *only* on Count I. I also agree that the deadly weapon finding should be deleted from the judgment. The State's abandonment of Count II was tantamount to an acquittal of that offense. Once the State abandoned Count II, it was gone for *all* intents and purposes. I concur in the Court's decision that affirms in part[2] and

§ 22.02(a) and (b)), and, as pointed out by the Majority, TEX. PENAL CODE § 30.02(d) elevates the offense of burglary of a habitation to a first degree felony if any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft. The Majority notes that the court of appeals properly modified the judgment to reflect that Count I (burglary of a habitation) is a first degree felony (that, in this case, was enhanced to repeater status). That portion of

reverses in part, and further modifies the trial court judgment to delete both the aggravated assault conviction in Count II and the deadly weapon finding.

### The Two–Count Indictment

Appellant was indicted in Count I of first degree burglary of a habitation (with the underlying felony of aggravated assault) and in Count II of second degree aggravated assault with a deadly weapon:

#### COUNT I

Francisco Duran, Jr., ... on or about the 10th day of December, 2010, ... did then and there intentionally or knowingly enter a habitation, without the effective consent of Gonzalo Gonzalez, the owner thereof, and attempted to commit or committed the felony offense of aggravated assault.

#### COUNT II

Francisco Duran, Jr., ... on or about the 10th day of December, 2010, ... did then and there intentionally, knowingly, or recklessly cause bodily injury to Gonzalo Gonzalez by striking Gonzalo Gonzalez about the head and/or body, and the defendant did then and there use or exhibit a deadly weapon, to-wit: electronic equipment or an object unknown to the Grand Jury, during the commission of said assault.

The indictment also included an enhancement allegation of a prior felony, which elevated the punishment range for Count I to a possible 15–99 years, or life, and the punishment range for Count II to that of a first degree felony (a possible 5–99 years, or life).

### The Jury Charge On Guilt/Innocence

After both sides rested, defense counsel objected to the jury being charged on both counts:

DEFENSE COUNSEL: We object that number five—or paragraph number five—these two paragraphs in the indictment which are not in the Charge should be in the alternative. You cannot be found guilty of both charges because they're both based on an aggravated assault....

STATE: Your Honor, that's the incorrect analysis. The courts do not apply that. As a matter of fact, he can be found guilty on both, but once he's found guilty on both, the Court would have to vacate one charge. He cannot be sentenced on both charges. He can, in fact, be found guilty. Double jeopardy prevents the sentencing of both not with regards to the guilty/innocence [*sic*] phase of the proceeding.[3]

\* \* \*

THE COURT: ... The objection is overruled. Both five and six will remain in place as currently stated.

### The Jury Charge on Punishment

After the jury found Duran guilty of both counts, the State chose to abandon the aggravated assault count out of double jeopardy concerns, and appellant did not object:

the judgment of the court of appeals should be affirmed.

3. However, this assertion by the State appears to be contrary to *Crocker v. State,* 573 S.W.2d 190, 197–98 (Tex.Crim.App.1978), where we held that, if two or more offenses are alleged in separate counts, and conviction of both would violate double jeopardy, the court "may submit each of the counts to the jury with the instruction that a conviction could be had on only one of them.... No double jeopardy problems are extant with this type of submission because the jury returns either an acquittal or a verdict of guilty on one count only."

THE STATE: At this time the State is abandoning the second charge of aggravated assault with a deadly weapon due to the fact that the Defendant cannot be punished on both charges. It is double jeopardy, so we are going forward solely on the burglary of a habitation.

THE COURT: All right.[4]

The jury found the enhancement paragraph "true" and sentenced Duran to 25 years.

### Both The Aggravated Assault Conviction And The Deadly Weapon Finding Should Be Deleted From The Judgment

On direct appeal, among other things, Duran complained that the judgment should not have reflected that he was convicted of Count II. In overruling this issue, the court of appeals held that it was unnecessary to delete Count II from the judgment "because appellant was, in fact, convicted of it." The court of appeals concluded that "the judgment should be modified to reflect that the State abandoned Count II before the punishment phase and

to affirmatively state that punishment was assessed only on Count I. This conclusion is not supported by case law.[5] I am in complete agreement with the Court's conclusion that the court of appeals should have vacated the conviction for Count II (aggravated assault), rather than leave it in the judgment.

In *Ex parte Cavazos*, this Court departed from its earlier decision in *Landers v. State* regarding how to remedy the situation when a defendant is convicted of more than one offense in violation of double jeopardy:

> This Court has pointed out that "[a] defendant suffers multiple punishments in violation of the Double Jeopardy Clause when he is convicted of more offenses than the legislature intended." *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim.App.1999) (citing *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)).

\* \* \*

When a defendant is convicted of two offenses that are the "same" for double-

---

**4.** As a general rule, the State must seek the consent of the Court to dismiss, waive or abandon a portion of the charging instrument. *Ex Parte Preston*, 833 S.W.2d 515, 518 (Tex.Crim.App.1992) (citing to *Woods v. State*, 152 Tex.Crim. 131, 211 S.W.2d 210, 211 (1948)). It would appear that the trial court "consented" to the State's abandonment of Count II.

**5.** The appellate court cited to *Gibson v. State*, No. 06–07–00200–CR, 2008 WL 2596221 (Tex.App.—Texarkana 2008, pet. ref'd (mem. op., not designated for publication); however, *Gibson* does not support the appellate court's conclusion. In *Gibson*, the defendant was charged with burglary and aggravated assault. Both offenses were submitted to the jury. Although the jury found the defendant guilty of both offenses, the trial court considered the aggravated assault to be a lesser included offense of the indicted offense of burglary, and therefore simply "ignored" the

aggravated assault verdict and entered a judgment of conviction only on the burglary. The appellate court in *Gibson* affirmed the trial court judgment, recognizing that "the appropriate remedy for any double jeopardy violation is to vacate one of the convictions." *Id.* at \*4 (citing to *Rangel v. State*, 179 S.W.3d 64, 71 (Tex.App.—San Antonio 2005, *pet. ref'd*) which in turn cited to *Ball v. United States*, 470 U.S. 856, 864, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) and *Landers v. State*, 957 S.W.2d 558, 559 (Tex.Crim.App.1997)) ("When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate any other convictions."). The court in *Gibson* concluded that "the trial court was correct in accepting the jury's verdict for burglary and ignoring or dismissing its conviction for aggravated assault." *Id.* at \*5.

jeopardy purposes, our case law tells us that the conviction for the "most serious" offense is retained and the other conviction is set aside. *Landers v. State*, 957 S.W.2d 558, 559–60 (Tex. Crim.App.1997). *Landers* states that the "most serious" offense is determined by the degree of the felony, range of punishment and sentence imposed, with rules of parole eligibility and good-conduct time as a tie-breaker. *Id.*

* * *

Our case law grants great discretion to the finder of fact. *See e.g., Swain v. State*, 181 S.W.3d 359, 365 (Tex.Crim. App.2005) (suppression motion); *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App.2003) (application for writ of habeas corpus); *Morales v. State*, 32 S.W.3d 862, 865–66 (Tex.Crim. App.2000) (decision to admit of [*sic*] exclude scientific evidence). We now extend that discretion to the determination of the "most serious" offense and hold that the "most serious" offense is the offense of conviction for which the greatest sentence was assessed. To the extent that *Landers* holds that other factors, such as the degree of the felony, range of punishment, and rules govern-

ing parole eligibility and awarding of good-conduct time, shall be used in that determination, it is overruled.[6]

Consistent with Presiding Judge Keller's concurring opinion in *Cavazos*, it appears that this Court has since relaxed its "overruling" of *Landers* and will look to these other factors in the event that the finder of fact assesses the same sentence.[7]

In this case, if the State had chosen not to abandon Count II, or if the defense had objected to the abandonment of Count II, the trial court would have had to submit both offenses to the jury for punishment.[8] And, if both offenses had been submitted to the jury to assess punishment, the offense given the greater sentence by the jury would have been the one retained, even though one was a first degree felony and the other was a second degree felony.[9] But, if the jury had assessed the same punishment for both offenses, the deadly weapon allegation in Count II of the indictment would likely have been the deciding factor in determining the "most serious" offense, since the aggravated assault allegations in Count II would have supported a deadly weapon finding, and the burglary allegations in Count I would not have.[10]

---

**6.** *Ex Parte Cavazos*, 203 S.W.3d 333, 336–38 (Tex.Crim.App.2006).

**7.** *Id.* at 340 ("Perhaps parole and good time consequences should not be the *first* tie-breaker, but it should be an available tie-breaker when the punishment is otherwise identical.") (Keller, P.J., concurring opinion) (emphasis in original). *See Villanueva v. State*, 227 S.W.3d 744, 749 (Tex.Crim.App.2007) (holding that, where there was a double jeopardy violation, and the sentences imposed were identical and no restitution was ordered, the affirmative deadly weapon finding in the judgment of one of the convictions acted as a tie-breaker under the "most serious" offense test).

**8.** *See Cavazos*, 203 S.W.3d at 338 (holding that the finder of fact "now" has the discretion to determine the "most serious" offense).

**9.** *Id.*

**10.** Burglary of a habitation is one of the enumerated 3g offenses only if the actor committed the offense with the intent to commit a felony under Section 21.02, 21.11, 22.011, 22.021, or 25.02 of the Penal Code. TEX.CODE CRIM. PROC. art. 42.12 § 3g(a)(1)(N). Under the indictment in this case, Count I was not alleged as a 3g offense. Aggravated assault is not one of the specifically enumerated 3g offenses in article 42.12(a)(1). Under the indictment in this case, Count II included a deadly weapon allegation, which had the potential of making it a 3g offense. *See* TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2). The presence of an affirmative finding of a deadly weapon on a judgment convicting a defendant of a non–3g offense has a significant impact

In that instance, even though a lesser degree of felony, Count II would have been retained, not Count I.

Nevertheless, in this case, the jury did not have the opportunity to assess punishment for both offenses. Rather, the State made the decision of which offense to retain and which to set aside when it abandoned Count II prior to the punishment phase of the trial, leaving only Count I—the burglary offense—to be submitted to the jury for punishment. Once the State chose to abandon Count II, the trial court should have set aside that jury verdict.

Abandonment of a charge after jeopardy attaches is tantamount to an acquittal because a defendant may not be retried for that charge.[11] So it stands to reason that, because the State cannot retry Duran for this aggravated assault offense since it abandoned Count II after jeopardy attached, the State cannot thereafter use Count II to support a deadly weapon finding under Count I.

Could the language in Count II of the indictment have served as notice to support the submission to the jury of a deadly weapon special issue on the remaining Count I? Yes. Could it now support a deadly weapon finding on Count I without a special issue having been submitted? No. Once Count II was abandoned by the State, it was an acquittal on that count. Count II cannot be resurrected to support a deadly weapon finding because it no longer exists as a viable charge or a valid conviction. It is gone. Therefore, I agree with the Court's decision to delete both the aggravated assault conviction and the deadly weapon finding.

With these comments, I join the majority.

## CONCURRING AND DISSENTING OPINION

Yeary, J., filed an opinion concurring in part and dissenting in part in which Keasler, J., joined.

I agree with the Court's first two conclusions: the court of appeals (1) should have vacated the aggravated assault conviction and (2) should not have held that the deadly weapon finding was proper based on the jury's verdict with respect to the burglary charge. Majority Opinion at 743. I take issue, however, with the Court's characterization of much of our previous case law with respect to deadly weapon findings. Most particularly, I question the Court's suggestion that the second rationale supplied in *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex.Crim.App.2009), is nothing more than dicta. Majority Opinion at 747–48. This suggestion strikes me as questionable, at best,[1] and in any event, unnecessary to the Court's purpose. For these reasons, I concur only in the result the Majority reaches with respect to these issues.

Regarding the Majority's rejection of the State's final argument, that a deadly

---

on a defendant's parole eligibility. *See also Villanueva*, 227 S.W.3d at 749.

11. *State v. Florio*, 845 S.W.2d 849, 852 (Tex. Crim.App.1992) (citing to *Ex Parte Preston*, 833 S.W.2d 515, 517 (Tex.Crim.App.1992)) (observing that any criminal accusation that is dismissed, waived, or abandoned after the defendant is placed in jeopardy may not be retried); *Black v. State*, 143 Tex.Crim. 318, 158 S.W.2d 795, 796 (1942) (holding that a count that is abandoned amounts to an acquittal of that charge).

1. *See, e.g., United States v. Potts*, 644 F.3d 233, 237 & n. 3 (5th Cir.2011) ("This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum.") (quoting *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991)). So far as I know, this Court has yet to fashion a rule—one way or the other—with respect to the precedential value of alternative holdings.

weapon finding may still be predicated on the abandoned jury verdict of guilty of aggravated assault, I believe it is premature for the Court to reach this issue. The Court concedes that the court of appeals never reached this alternative argument. Majority Opinion at 749. It is usually our practice that, when our resolution of a particular issue on discretionary review operates to raise or revive an alternative argument or issue in the lower appellate court, our recourse is to remand the cause to allow the court of appeals to address the alternative argument or issue in the first instance. *See McClintock v. State*, 444 S.W.3d 15, 20–21 (Tex.Crim.App.2014) (it is "[t]ypically" the Court's practice to remand for resolution of issues not yet addressed in the lower appellate court unless "the proper disposition of an outstanding issue is clear," in part because "our resolution of the issue (if any should even be necessary after a remand) would benefit from a carefully wrought decision from the court of appeals").

Instead, the Court today resolves the issue itself, and does so in a perfunctory manner that does not seem to me to give adequate consideration to the potential merits of the State's argument. It seems to me that there may be good arguments to support the Court's conclusion that deadly weapon findings are offense-specific. But I do not think the issue is beyond debate, and I would give the court of appeals a chance to address it in the first instance. I would remand the cause to the court of appeals for a fuller treatment. We may or may not subsequently find it necessary to address the argument/issue ourselves in a later petition for discretionary review. Because the Court does not remand the cause, I dissent to that facet of its opinion.